# EXHIBIT A



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us    My Account    

## CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

« BACK

Not all search results will be displayed on-line. For example, the following case types (Sealed, Juvenile, Adoption and Mental Health Cases) may or may not be in existence and may or may not be viewable by the public pursuant to Florida Supreme Court Mandate and the corresponding Access Security Matrix.

### CHENMED, LLC ET AL VS ANAYA BANERJEE ET AL

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2022-021379-CA-01 | **Filing Date:** | 11/03/2022 |
| **State Case Number:** | 132022CA021379000001 | **Judicial Section:** | CA43 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Trade Secrets |
| **Case Status:** | OPEN | | |

### 👥 Parties
Total Of Parties: 5  ➕

### 🔧 Hearing Details
Total Of Hearings: 0  ➕

### 🔊 Dockets
Total Of Dockets: 7  ➖

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 5 | 11/09/2022 | | Receipt: | Event | RECEIPT#:3100003 AMT PAID:$401.00 NAME:JAMES A GALE (ESQ) 2 S BISCAYNE BLVD FL 30 MIAMI FL 33131-1806 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:11/09/2022 REGISTER#:310 CASHIER:EFILINGUSER |
| 📄 | 8 | 11/08/2022 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 7 | 11/08/2022 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 6 | 11/08/2022 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 3 | 11/03/2022 | | Civil Cover Sheet - Claim Amount | Event | |
| 📄 | 2 | 11/03/2022 | | Complaint | Event | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
|  | 1 | 11/03/2022 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



# HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2022 Clerk of the Courts. All rights reserved.





**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Chenmed, LLC, Chen Neighborhood Medical Centers South FL LLC</u>
Plaintiff                                                                Case # _____
                                                                         Judge _____

vs.

<u>Anaya Banerjee, Aledade, Inc., Aledade Care Solutions of Florida, LLC</u>
 Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☒ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  <u>1</u>

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ James A Gale</u>        Fla. Bar # <u>371726</u>
      Attorney or party                 (Bar # if attorney)

<u>James A Gale</u>           <u>11/07/2022</u>
  (type or print name)          Date

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CHENMED, LLC, and
CHEN NEIGHBORHOOD
MEDICAL CENTERS OF SOUTH
FLORIDA, LLC,

        Plaintiffs,

vs.

ANAYA BANERJEE, ALEDADE, INC., and
ALEDADE CARE SOLUTIONS OF FLORIDA, LLC,

        Defendants.

_____/

CASE NO.:
Complex Business Division

## **COMPLAINT**

Plaintiffs, ChenMed, LLC ("ChenMed, LLC") and Chen Neighborhood Medical Centers of South Florida, LLC ("Chen Neighborhood") (collectively, "Plaintiffs" or "ChenMed"), bring this action against Defendants, Anaya Banerjee ("Banerjee"), Aledade, Inc. ("Aledade, Inc."), and Aledade Care Solutions of Florida, Inc. ("Aledade Care Solutions") (collectively, "Aledade" or "Defendants"), and allege as follows:

### **NATURE OF THE ACTION**

1.      This is an action for, *inter alia*, (1) breach of Banerjee's Confidential and Restrictive Covenant Agreement; and (2) Aledade's tortious interference with Banerjee's contract.

### **INTRODUCTION**

2.      Banerjee is ChenMed's former Vice President of Strategic Payer Partnerships, who is in the process of being hired by Aledade or was recently hired by Aledade, in direct violation of Banerjee's Confidentiality and Protective Covenant Agreement (the "Confidentiality and Restrictive Covenant Agreement" or "RCA") with ChenMed. *See* Exhibit 1.

3.      Banerjee's employment at Aledade is a blatant breach of the non-competition provision of her RCA, as Aledade is a Competing Business of ChenMed as defined by the RCA, and Banerjee is performing the same and/or similar work at Aledade as what she performed at ChenMed, in states where ChenMed operates.

4.      Additionally, Banerjee's new employment at Aledade will necessarily require Banerjee to use, reference, and/or disclose ChenMed's confidential information in furtherance of that role (also in violation of Banerjee's Confidentiality and Restrictive Covenant Agreement).

## THE PARTIES, JURISIDICTION AND VENUE

5.      Plaintiff ChenMed, LLC is a Delaware limited liability company with its principal place of business located in Miami Gardens, Florida.

6.      Plaintiff Chen Neighborhood is an affiliated entity of ChenMed, LLC, and is a Florida limited liability company with its principal place of business located in Miami Gardens, Florida.

7.      Defendant Aledade, Inc. is a Delaware corporation with its principal place of business in Maryland.

8.      Defendant Aledade Care Solutions is a Florida corporate subsidiary of Aledade, Inc. with its principal place of business in Maryland.

9.      Defendant Banerjee is an individual who, upon information and belief, currently resides at 1118 River Bend Drive, Houston, Texas 77063.

10.      This Court has subject matter jurisdiction pursuant to Fla. Stat. §26.012, as the amount in controversy exceeds $50,000, exclusive of attorney's fees and involves injunctive relief.

11.      This Court has personal jurisdiction over Aledade, Inc. and Aledade Care Solutions because, pursuant to Fla. Stat. § 48.193(1)(a)(1), they are operating, conducting, engaging in, and

carrying on a business in Florida; pursuant to Fla. Stat. § 48.193(1)(a)(2), they committed tortious acts in this State; and pursuant to Fla. Stat. § 48.193(2), they are engaging in substantial and not isolated activities within Florida.

12.     This Court has personal jurisdiction over Banerjee because, pursuant to Fla. Stat. §48.193(1)(a)(2), she has committed tortious acts within this State; and pursuant to Fla. Stat. §48.193(1)(a)(7), she has breached a contract in this state by failing to perform acts required by the contract to be performed in this state. Banerjee consented to personal jurisdiction in this Court in the Confidentiality and Restrictive Covenant Agreement.  Exhibit 1, ¶ 7(b)(1).

13.     Venue is proper in this Circuit pursuant to Fla. Stat. §47.011, because: (i) the acts giving rise to the claims occurred, at least in part, in Miami-Dade County; and (ii) Banerjee agreed in the Confidentiality and Restrictive Covenant Agreement that is at issue in this action that venue is proper in Miami-Dade County.

**GENERAL ALLEGATIONS**

**Fee-For-Service Vs. Risk-Based/Value-Based Care**

14.     Traditionally, healthcare providers and healthcare organizations operate under a "fee-for-service" reimbursement model where they are compensated by insurance or Medicare based on the volume of services they perform.  A common critique of the fee-for-service model is that it incentivizes quantity over quality and leads to unnecessary tests and treatment, inefficiency, waste, and worse outcomes for patients.

15.     In response to these concerns, alternative payment models that better align the needs of the patient with the incentive for the healthcare provider have begun to gain more traction.

16.     "Value-based care" is an alternative model wherein healthcare providers are compensated based on the quality of care and patient outcomes, rather than the volume of services

provided.  One type of value-based care is a risk-based model where healthcare providers assume some or all of the financial risk for patients' care and are compensated based on a capitated payment (i.e. a fixed amount of money per patient per month), a percentage of the premium the payer receives from an entity such as the Centers for Medicare & Medicaid Services, or other forms of payment.

17.     Only a small portion of healthcare providers operate under the value-based care and risk-based models.  The majority of healthcare providers, even in the Medicare Advantage space, still use the traditional "fee-for-service" model.

### ChenMed's Model

18.     ChenMed and its related family of companies is a physician-led, family-orientated primary care provider that brings superior healthcare to moderate-to-low income seniors under the full-risk, value-based model.  ChenMed caters to seniors who are part of the federal Medicare Advantage Program, which incentivizes healthcare providers to focus on managed, preventative (proactive) care instead of reactive care, with the goal of such proactive care being to keep patients healthier.

19.     Moreover, ChenMed is at the forefront of "Transforming Healthcare for Seniors" by providing superior, coordinated care for seniors on Medicare.  ChenMed's doctors operate in many states throughout the country, including but not limited to, the States of Florida where ChenMed is headquartered, and the State of Texas where Banerjee resides.

20.     ChenMed has spent a significant amount of time, effort, money, and other resources to grow and expand its practice of providing top-notch value-based healthcare to underprivileged and underserved people in communities throughout the nation.

21.     ChenMed has also spent a significant amount of time, effort and money to develop relationships and goodwill with existing and prospective patients, as well as highly confidential and proprietary business information.

22.     This highly confidential and proprietary business information includes, but is not limited to, business methods and specialized training programs and materials unique to value-based care, proprietary software applications, and significant amounts of operational data and analytics.

23.     ChenMed has undertaken significant efforts to protect its business interests, including not limited to: i) requiring its employees – such as Banerjee – to enter into non-disclosure and restrictive covenants to protect its business interests; ii) requiring its employees to undergo confidentiality and compliance training; iii) restricting access to its systems through VPN, password-protection, and role-based permission systems; iv) requiring employees to abide by information classification policies; v) restricting employees from sending confidential information to their personal email; vi) monitoring of email systems through a data loss prevention program; vii) disabling flash-drive access to company issues computers; and viii) disabling the ability to print from company issues computers while outside company premises.

**Banerjee's Employment and Agreements with ChenMed**

24.     ChenMed hired Banerjee as its "Vice President, Strategic Payer Partnerships" on January 18, 2021.

25.     In this role, Banerjee was responsible for, *inter alia*: i) evaluating, negotiating and executing prospective payer and business partnerships; (ii) maintaining strategic relationships with existing payer partnerships; (iii) directing national health plan contracting; (iv) leading a team to perform ongoing analysis of payer contract terms and financial performance with the goal of

identifying opportunities to improve financial performance; (v) partnering with the CFO, COO and President of New Markets on payer assessment insights; and (vi) building strong cross-functional relationships and working collaboratively with key internal and external (payer) stakeholders to drive successful execution of payer performance improvement initiatives.

26.     As its Vice President, Strategic Payer Partnerships, Banerjee was an integral part of ChenMed's business operations and business plans in every state and market where ChenMed operates throughout the nation – in particular ChenMed's relationships with its payors and business partners, which is ChenMed's revenue source.

27.     ChenMed also provided Banerjee with extraordinary, unique, and specialized training in furtherance of her role as Vice President, Strategic Payer Partnerships.

28.     In light of the importance of Banerjee's role at ChenMed, as well as the confidential, proprietary, and trade secret information that Banerjee would be provided and exposed to in this role, ChenMed required Banerjee to execute a Confidentiality and Protective Covenant Agreement prior to the commencement of her employment at ChenMed.  *See* Exhibit 1.

29.     The Confidentiality and Protective Covenant Agreement contains a non-competition provision of limited duration that precludes Banerjee from performing certain activities for a competitor within a limited territory:

> **Non-Compete**. By signing this Agreement, Employee acknowledges and understands that the Company has a protectable interest in its extraordinary, unique and specialized training provided exclusively to Company employees, its Confidential Information, trade secrets, know how, goodwill, patient and preferred provider lists, policies, procedures and methods of doing business, Employee shall be restricted from competing with the Company upon Employee's separation of employment from the Company, for any reason, as follows:
>
> a. During the Employee's employment and for a period of twenty-four (24) months from the date of Employee's separation of employment from the Company (the "**Restricted Period**"), Employee agrees that Employee shall not engage, directly or indirectly, in any **Restricted Activity** for any **Competing Business** within the **Restricted Territory**. . . . *See* Exhibit 1, ¶ 7, 7(a) (bold in original).

30.     The Confidentiality and Protective Covenant Agreement narrowly defines a "Competing Business" to focus on ChenMed's specific lines of business:

**"Competing Business"** is defined as:

a) Primary Care Practice that provides health care services pursuant to a Medicare Advantage Risk Agreement, or

b) Division, department, or subsidiary of an entity that directly or indirectly serves or supports Primary Care Practices which provide health care services to Medicare patients and are paid pursuant to a Medicare Advantage Risk Agreement. For the sake of clarity, these entities would include, but not be limited to, health plans, hospitals, consulting firms, business organizations, management service organizations, technology enablement companies and management companies. For further clarification, large health systems or organizations would not be a Competing Business as a whole, but rather, the portion of the organization that is serving or supporting Primary Care Practices which provide health care services to Medicare patients and are paid pursuant to a Medicare Advantage Risk Agreement are restricted, or

c) the business engaged in by the Company as of Employee's last day of employment with the Company.  *See* Exhibit 1, ¶ 7(b)(1).

31.     Furthermore, the Confidentiality and Protective Covenant Agreement narrowly defines "Restricted Activity" as

competing against the Company by performing any of the same or similar work as Employee performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company and/or in any capacity in which he/she would use, reference or disclose Confidential Information, in a Restricted Territory for an entity engaged in a Competing Business. . . . *See* Exhibit 1, ¶ 7(b)(2)(a).

32.     The Confidentiality and Protective Covenant Agreement narrowly defines "Restricted Territory" as

(1) Any state in which the Company operates as of the Employee's last day of employment or (2) any state in which the Company is in current negotiations to expand its operations as of Employee's last day of employment with the Company about which Employee had actual knowledge.  *See* Exhibit 1, ¶ 7(b)(3).

33.     The Confidentiality and Protective Covenant Agreement also contains a non-solicitation provision of limited duration that, *inter alia*, precludes Banerjee from soliciting "any

vendor or business partner of the Company, including but not limited to health plan partners or payors" to utilize or purchase any services or products from any business other than ChenMed that are competitive with or a substitute for the services or products offered by ChenMed. See Exhibit 1, ¶ 10.

34.     The restrictive covenants in Banerjee's RCA are narrowly tailored and necessary to protect ChenMed's legitimate business interests. The RCA explicitly explains that the restrictive covenants were necessary to protect ChenMed's legitimate business interests:

> **WHEREAS**, in exchange for entering into this Agreement, the Company has agreed to provide Employee with extraordinary, unique and specialized training in which the Company invests significant expense and resources and access to its Confidential Information []; and

> **WHEREAS**, the Parties agree that this Agreement is necessary to protect the Company's legitimate business interests, including but not limited to its extraordinary, unique, and specialized training and Confidential Information.[1] *See* Exhibit 1.

35.     The restrictive covenants contained in Banerjee's RCA are also reasonable in their duration and scope, and Banerjee agreed that "… the restrictions set forth herein after fair, reasonable, and necessary to protect the Company's legitimate business interests, including its goodwill with its patients, customers, vendors and employees, its Confidential Information, and its unique and specialized training."[2] *See* Exhibit 1, ¶ 11.

---

[1] Banerjee further acknowledged that she "… would not be eligible for employment with the Company, access to confidential information and the Company's unique and specialized training but for Employee signing this Agreement…". *See* Exhibit 1, ¶ 1.

[2] Banerjee further acknowledged and agreed that "… (a) Employee's abilities and skills are readily useable in a variety of capacities in most geographic areas such that the foregoing restrictions do not unreasonably restrict Employee with respect to seeking employment elsewhere in non-competitive ventures should Employee's employment with the Company end; (b) the Company significantly invested in Employee's development and the extraordinary, unique and specialized training provided exclusively and only by the Company to Employee; (c) the relationship between the Company and its patients, customers and vendors are of a near-permanent nature and but for Employee's association with the Company, Employee would not have had contact with the Company's patients and customers; and (d) the information to which Employee has had or will have access is of a confidential and proprietary nature, and the good will of the Company and/or customer, patients and vendor relationships which Employee has or will enjoy while employed by the Company are significant and valuable to the Company. Employee also acknowledges that the Restricted Territory is appropriate and reasonable considering the scope of the Company's business, its plans to expand

36.     Additionally, Banerjee agreed in the Confidentiality and Restrictive Covenant Agreement, that "in the event of any breach or threatened breach of such covenants, [] [ChenMed] shall be entitled to an injunction from a court of competent jurisdiction enjoining [Banerjee] from committing any violation of those covenants, and *[Banerjee] hereby consents to the issuance of such an injunction*." *See* Exhibit 1, ¶ 12 (emphasis added)

**Banerjee's Employment with Aledade in Direct Violation of Her Restrictive Covenants**

37.     Banerjee remained in her position as Vice President, Strategic Payer Partnerships until her voluntary departure on October 26, 2022.

38.     On  September 29, 2022, Banerjee informed ChenMed of her intention to resign from her position at ChenMed. Banerjee disclosed that she intended to accept employment with Aledade as its "Chief Commercial Officer".

39.     Aledade is a Competing Business of ChenMed in the healthcare industry.  Aledade promotes itself as a primary care physician platform that partners with primary care practices on accountable care.  *See* https://www.aledade.com/.

40.     Specifically, Aledade is expanding into the "value-based" care model and is investing in value-based care for seniors covered by Medicare Advantage.  *See* https://www.hcinnovationgroup.com/policy-value-based-care/accountable-care-organizations-acos/news/21270240/funding-round-to-bolster-aledades-medicare-advantage-business; https://resources.aledade.com/press-releases/aledade-raises-100-million-series-d-to-help-more-primary-care-practices-thrive-in-value-based-care;  https://resources.aledade.com/blogs/why-we-are-launching-aledade-care-solutions.

---

the business, and the risk of competing entities misusing the Company's Confidential Information on a nationwide basis." *See* Exhibit 1, ¶ 11.

41.     More than two hundred thousand (200,000) patients covered by Medicare Advantage now receive care through an Aledade Accountable Care Organization (ACO).  *See* https://www.hcinnovationgroup.com/policy-value-based-care/accountable-care-organizations-acos/news/21270240/funding-round-to-bolster-aledades-medicare-advantage-business.

42.     As such, Aledade is a "Competing Business" as that term is defined in the RCA, as it "directly or indirectly serves or supports Primary Care Practices which provide health care services to Medicare patients and are paid pursuant to a Medicare Advantage Risk Agreement." *See* Exhibit 1, ¶ 7(b)(1).

43.     Aledade commenced discussions with Banerjee to hire her for the Chief Commercial Officer at Aledade while Banerjee was still employed as ChenMed's Vice President, Strategic Payer Partnerships.

44.     On October 14, 2022, ChenMed sent a letter to Banerjee reminding her of her post-employment obligations to ChenMed and specifically of the restrictive covenants contained in her Confidentiality and Restrictive Covenant Agreement.

45.     On October 21, 2022, ChenMed received a letter in response from Aledade directly. As such, Aledade is aware of Banerjee's duties and role at ChenMed, as well as the restrictive covenants in her Confidentiality and Restrictive Covenant Agreement.

46.     In its October 21, 2022 letter, Aledade confirmed it had hired Banerjee as its Chief Commercial Officer.

47.     Upon information and belief, Banerjee is currently serving as Chief Commercial Officer for Aledade.

48.     Aledade's role of Chief Commercial Officer falls within the "Restricted Territory" as defined in the Confidentiality and Restrictive Covenant Agreement because the scope of the role includes states in which ChenMed operates, including Florida. *See* Exhibit 1, ¶ 7(b)(3).

49.     Upon information and belief, Banerjee was hired as Aledade's Chief Commercial Officer because of her knowledge of ChenMed's confidential information and connections with payors and business partners that she gained while in the Vice President, Strategic Payer Partnerships role at ChenMed.

50.     In furtherance of Banerjee's duties as Vice President, Strategic Payer Partnerships, ChenMed provided Banerjee with a significant amount of ChenMed's confidential and trade secret information, including but not limited to ChenMed's prospective payor and business partners, the terms of ChenMed's agreements with existing payors and partners, ChenMed's negotiation strategies with payors and partners, business metrics, financials, future markets, analytics on market distribution and demographics, potential practice acquisition targets, growth plans and strategies, models, and information and preferred contract terms related to payer agreements.

51.     According to the job description provided by Banerjee to ChenMed, Aledade's Chief Commercial Officer is responsible for: "achieving the company's goals on national health plan contracting for Commercial, Medicare….contracts[;] strategy for contracting on behalf of independent primary care practices[;]… driv[ing] and maintain[ing] strategic relationships with existing health plan partners[;]…[and] ***lead[ing] the evaluation for prospective payer partnerships***."

52.     As such, it is clear that Banerjee is working for a Competing Business and performing the same and/or similar activities at Aledade that she performed at ChenMed, in the

restricted territory, in direct violation of the non-competition provisions of the Confidentiality and Restrictive Covenant Agreement.

## COUNT I
*Breach of Contract – Banerjee's Confidentiality and Restrictive Covenant Agreement*
(Against Banerjee)

53.     Plaintiffs hereby restate and reincorporate the allegations set forth in Paragraph 1 through 52, as if fully set forth herein.

54.     In light of the importance of Banerjee's business activities while at ChenMed, the specialized training ChenMed provided to Banerjee, and Banerjee's access to ChenMed's confidential, proprietary and trade secret information, Banerjee and ChenMed entered into the Confidentiality and Restrictive Covenant Agreement on December 17, 2020.  The Confidentiality and Restrictive Covenant Agreement is a valid and binding agreement between ChenMed and Banerjee.

55.     ChenMed has performed all of its obligations under the Confidentiality and Restrictive Covenant Agreement, including but not limited to providing all consideration and monies owed to Banerjee.

56.     As Vice President, Strategic Payer Partnerships, Banerjee was responsible for, *inter alia*: i) evaluating, negotiating and executing prospective payer and business partnerships; (ii) maintaining strategic relationships with existing payer partnerships; (iii) directing national health plan contracting; (iv) leading a team to perform ongoing analysis of payer contract terms and financial performance with the goal of identifying opportunities to improve financial performance; (v) partnering with the CFO, COO and President of New Markets on payer assessment insights; and (vi) building strong cross-functional relationships and working collaboratively with key

internal and external (payer) stakeholders to drive successful execution of payer performance improvement initiatives.

57.     Pursuant to ¶ 7 of the Confidentiality and Restrictive Covenant Agreement, Banerjee agreed that she would not perform any of the same or similar work to that which he performed for ChenMed for a Competing Business in any state in which ChenMed operates, for a period of twenty-four (24) months following her termination.

58.     Banerjee further agreed that the restrictive covenants in the Confidentiality and Restrictive Covenant Agreement are fair, reasonable, and necessary to protect ChenMed's legitimate business interests, including its goodwill with patients, customers, vendors and employees, its confidential information, and its unique and specialized training, which Banerjee received.

59.     Aledade is a Competing Business under the Confidentiality and Restrictive Covenant Agreement because, at the very least, it "directly or indirectly serves or supports Primary Care Practices which provide health care services to Medicare patients and are paid pursuant to a Medicare Advantage Risk Agreement."  Further, Aledade is investing in value-based care for seniors covered by Medicare Advantage.  ChenMed is one of only a small portion of healthcare providers that also operates under the value-based care model.

60.     In her role as Aledade's Chief Commercial Officer, Banerjee will improperly compete with ChenMed on behalf of Aledade within the United States, including Florida and other states in which ChenMed operates, constituting the restricted territory identified in the Covenant Agreement.

61.     As such, it is evident that Banerjee's employment with Aledade violates the Confidentiality and Restrictive Covenant Agreement, including but not limited to a material breach of the non-competition provision of the Agreement.

62.     Moreover, Banerjee's employment agreement with Aledade will also result in Banerjee violating the vendor non-solicitation covenant which precludes Banerjee from soliciting "any vendor or business partner of the Company, including but not limited to health plan partners or payors" to utilize or purchase any services or products from any business other than ChenMed that are competitive with or a substitute for the services or products offered by ChenMed

63.     Additionally, Banerjee agreed and acknowledged that her breach of the restrictive covenants would cause continuing and irreparable injury to ChenMed, for which no remedy at law exists.

64.     Moreover, in the Confidentiality and Restrictive Covenant Agreement, Banerjee consented to the issuance of an injunction for any breach or threatened breach of her restrictive covenants.

65.     Now, as a result of Banerjee's improper employment with Aledade, ChenMed has no adequate remedy at law.

66.     Banerjee's material breaches of the restrictive covenants in the Confidentiality and Restrictive Covenant Agreement violate that Agreement and will cause irreparable harm to ChenMed unless Banerjee's actions are enjoined.

## COUNT II
*Tortious Interference with Contract*
(Against Aledade, Inc. and Aledade Care Solutions of Florida, LLC)

67.     Plaintiffs hereby restate and reincorporate the allegations set forth in Paragraph 1 through 52, as if fully set forth herein.

68.     The Confidentiality and Restrictive Covenant Agreement between Banerjee and ChenMed is a valid and binding contract.

69.     The Confidentiality and Restrictive Covenant Agreement between Banerjee and ChenMed contains restrictive covenants that prevent Banerjee from working for a Competing Business, either directly and indirectly.

70.     Aledade is and was aware of Banerjee's restrictive covenant obligations, which precluded Banerjee from working for a Competing Business for two (2) years following the termination of employment from ChenMed.  Aledade was on notice at least as early as October 14, 2022, when ChenMed sent a letter to Banerjee reminding her of her obligations under the Confidentiality and Restrictive Covenant Agreement, to which Aledade directly responded to ChenMed on October 21, 2022.

71.     Despite knowledge of Banerjee's Confidentiality and Restrictive Covenant Agreement, Aledade hired Banerjee, thereby inducing her to breach her obligations under the Confidentiality and Restrictive Covenant Agreement, in order to cause her to perform the same and/or substantially similar roles to that which she performed at ChenMed.

72.     Banerjee breached the Confidentiality and Restrictive Covenant Agreement by accepting employment with Aledade to perform the same and/or substantially similar job that she performed while at ChenMed.

73.     Aledade's actions were intentional and unjustified.

74.     As a result of Aledade's tortious interference with the Confidentiality and Restrictive Covenant Agreement, ChenMed has suffered damages in an amount to be determined at trial.

75.     Additionally, Aledade's tortious interference will cause irreparable injury to ChenMed for which no adequate remedy exists at law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, ChenMed, LLC and Chen Neighborhood Medical Centers of South Florida, LLC, pray for an Order and Judgment as follows:

1.     That the Court issue temporary and permanent injunctive relief against Banerjee, enjoining her from working for a Competing Business of ChenMed for a period of twenty-four (24) months, including but not limited to Aledade and any of its affiliates, parent companies, or other related entities;

2.     That the Court enjoin Aledade from further violation of and interference with, Banerjee's Confidentiality and Restrictive Covenant Agreement, including but not limited to the restrictive covenants within;

3.     That Banerjee be required to pay any other damages incurred by ChenMed as a result of her tortious conduct and breach of her restrictive covenants;

4.     That Aledade be required to pay ChenMed's damages as a result of their tortious interference with the Confidentiality and Restrictive Covenant Agreement in an amount to be proven at trial;

5.     That the Court enjoin Banerjee from further violation of the restrictive covenants in the Confidentiality and Restrictive Covenant Agreement and enjoin Banerjee from any use or disclosure of ChenMed's confidential information and trade secrets.

6.     That the Court grant Plaintiffs all such other and further relief as is just and proper.

Dated: November 3, 2022      Respectfully submitted,

COZEN O'CONNOR

By:  /s/ James A. Gale
      James A. Gale / Fla. Bar No. 371726
      Email: jgale@cozen.com
      Samuel A. Lewis / Fla. Bar. No. 55360
      Email: slewis@cozen.com
      David M. Stahl / Fla. Bar No. 84713
      E-mail: dstahl@cozen.com
      Jonathan E. Gale / Fla. Bar No. 106938
      Email: jegale@cozen.com
      COZEN O'CONNOR
      Southeast Financial Center 200 South Biscayne
      Blvd., Suite 3000 Miami, Florida 33131
      Telephone: 305-358-5001

*Counsel for Plaintiffs, ChenMed, LLC and Chen Neighborhood Medical Centers of South Florida, LLC*

17

# EXHIBIT 1



## CONFIDENTIALITY AND PROTECTIVE COVENANT AGREEMENT – Tier 4

ANANYA BANERJEE

6425 Indian Hills Rd

Edina, MN , 55439

**THIS CONFIDENTIALITY AND PROTECTIVE COVENANT AGREEMENT** (the " **Agreement**") is made and entered into by and between ANANYA BANERJEE("**Employee**") and Chen Neighborhood Medical Centers of South Florida, LLC and its parents, affiliates, subsidiaries, successors and assigns , together with the ChenMed Family of Companies (together, the "**Company**").  Employee and the Company are collectively referred to as the " **Parties**".

WITNESSETH:

**WHEREAS,** Employee desires employment with the Company, and the Company desires to employ Employee; and

**WHEREAS**, in exchange for entering into this Agreement, the Company has agreed to provide Employee with extraordinary, unique and specialized training in which the Company invests significant expense and resources and access to its Confidential Information (as defined herein); and

**WHEREAS**, the Parties agree that this Agreement is necessary to protect the Company's legitimate business interests, including but not limited to its extraordinary, unique and specialized training and Confidential Information.

**NOW, THEREFORE,** in exchange for the promises and mutual covenants contained in this Agreement, the Parties, intending legally to be bound, agree as follows:

DocuSign Envelope ID: 9286068D-7668-4580-9430-222808797570

1.   **Consideration**.  In exchange for Employee entering into this Agreement, the Company has agreed to employ Employee and to provide Employee access to Confidential Information (as defined herein) and extraordinary, unique, and specialized training exclusive to the Company which Employee cannot receive elsewhere.  Employee agrees that (a) Employee would not be eligible for employment with the Company, access to confidential information and the Company's unique and specialized training but for Employee signing this Agreement and (b) this Agreement is supported by good and valuable consideration, to which Employee is not otherwise entitled.

2.   **Employment**.  Employee shall be employed by the Company on an at-will basis, such that Employee may resign at any time and the Company may terminate Employee's employment at any time.  The at-will nature of Employee's employment may be altered only by a written agreement signed by the Company's Chief Executive Officer ("CEO").

3. **Conflicts**.  During Employee's employment with the Company, Employee shall not: (a) engage in any outside business activity without written authorization from the Company; (b) in any way compete with the Company; and/or (c) solicit anyone to compete with or to prepare to compete with the Company.

4. **Company Property**. "Company Property" means all documents, books, reports, files, supplies, hardware, software and equipment, and any other tangible materials created, used or obtained by the Company, and all copies thereof, whether prepared by Employee or otherwise coming into Employee's possession, as well as any other materials containing Confidential Information as defined below.  Employee acknowledges that:

a.All Company Property shall be and remain the exclusive property of the Company;

b. Employee will preserve, use and hold Company Property only for the benefit of the Company and to carry out the Company's business; and

c. On the Company's request at any time, Employee shall immediately return all Company Property to the Company, including all copies or reproductions, and shall delete or procure the deletion of, all electronically stored copies of the same.

5. **Non-Disclosure/Confidentiality.**  Employee will have access to Employer's and Company's trade secrets and other confidential and/or proprietary information ("Confidential Information" defined below).  Confidential Information is, and shall remain, the exclusive property of the Company.  Employee acknowledges that he/she will use his/her best efforts to prevent the disclosure of such Confidential Information and will not, either directly or indirectly, use, misappropriate or disclose, or aid any other person in disclosing Confidential Information, unless at the express direction of the Company.  In acknowledging this restriction, Employee understands the substantial value of the Confidential Information to Company and Employee's intimate knowledge of Company's business, and acknowledges that such constitutes goodwill

and protectable interest of the Company.

a. Employee shall promptly return all Confidential Information to the Company upon his/her separation of employment from the Company or at any time as requested by the Company. Confidential Information shall not include any data or information that has been voluntarily disclosed to the public or its competitors by the Company, or that has entered the public domain through lawful means.

b. "Confidential Information" is all company data or information, including all confidential, proprietary and trade secret information, Employee has come into contact with during employment, including, but not limited to, all nonpublic information regarding the Company's products, methods, know how, patients, customers, work-product, billing, strategies, marketing and promotions.

c. Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to a valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. Except as otherwise prohibited by law, Employee shall provide written notice of any order to an authorized officer of the Company within 24 hours of receiving an order where possible, but in any event, sufficiently in advance of making any disclosure to permit the Company to contest the order or seek confidentiality protections, as determined in the Company's discretion.

d. Further, Employee understands that nothing in this Agreement, including the foregoing, prevents Employee or an attorney on Employee's behalf from communicating with the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the National Labor Relations Board, the Department of Labor, or any other governmental authority, including state and local agencies, and making a good faith report of possible violations of securities or other laws or regulations to a governmental authority, or cooperating with or participating in a legal proceeding relating to such violations.

e. Employee understands and agrees that nothing in the Confidential Information definition set forth above encompasses (or places any restriction on Employee's discussions regarding) employees' wages, benefits, payroll information and other terms and conditions of employment, nor does anything in this Agreement interfere with in any way, restrict or impede any right any employee may have to engage in activity protected by Section 7 of the National Labor Relations Act without fear of retaliation, and/or any state or local laws protecting.

f. Pursuant to 18 U.S.C. 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation

DocuSign Envelope ID: 9286068D-7668-4580-9430-222808797570

of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  Further, an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

6. **Notices**.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given when delivered by hand, five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt, addressed as follows:

**If to the company:**                          **If to the employee:**

ChenMed, LLC                                     At Employee's address set forth above

1395 NW 167th Street

Miami Gardens, FL  33169

Attention:  Legal Department

or to such other addresses as either Party hereto may from time to time give notice of to the other.

7. **Non-Compete**.  By signing this Agreement, Employee acknowledges and understands that the Company has a protectable interest in its extraordinary, unique and specialized training provided exclusively to Company employees, its Confidential Information, trade secrets, know how, goodwill, patient and preferred provider lists, policies, procedures and methods of doing business, Employee shall be restricted from competing with the Company upon Employee's separation of employment from the Company, for any reason, as follows:

a. During the Employee's employment and for a period of twenty-four (24) months from the date of Employee's separation of employment from the Company (the "**Restricted Period**"), Employee agrees that Employee shall not engage, directly or indirectly, in any **Restricted Activity** for any **Competing Business** within the **Restricted Territory**.Employee shall not, regardless of where in the United States the job, position or company is located, engage in any Restricted Activity, with Iora Health, Oak Street Health, VillageMD,Optum's Care Delivery Organization, Cano Health, Humana's Care Delivery Organization, Welsh Carson, or CareMore Health, or any Competing Business in which the foregoing entities own at least 10% interest.

b. Definitions:

DocuSign Envelope ID: 9286068D-7668-4580-9430-222808797570

1. "**Competing Business**" is defined as:

a) Primary Care Practice that provides health care services pursuant to a Medicare Advantage Risk Agreement, or

b) Division, department or subsidiary of an entity that directly or indirectly serves or supports Primary Care Practices which provide health care services to Medicare patients and are paid pursuant to a Medicare Advantage Risk Agreement.  For the sake of clarity, these entities would include, but not be limited to, health plans, hospitals, consulting firms, business organizations, management service organizations, technology enablement companies and management companies. For further clarification, large health systems or organizations would not be a Competing Business as a whole, but rather, the portion of the organization that is serving or supporting Primary Care Practices which provide health care services to Medicare patients and are paid pursuant to a Medicare Advantage Risk Agreement are restricted, or

c) the business engaged in by the Company as of Employee's last day of employment with the Company.

2. "**Restricted Activity**" is defined as:

a) competing against the Company by performing any of the same or similar work as Employee performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company and/or in any capacity in which he/she would use, reference or disclose Confidential Information, in a Restricted Territory for an entity engaged in a Competing Business.  Restricted Activity also includes owning and/or operating a Competing Business.  Notwithstanding the preceding, ownership interest, including stock or stock options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Restricted Activity.  Further, nothing herein prohibits Employee from practicing medicine in an emergency situation.

3. "**Restricted Territory**" is defined as (1) any state in which the Company operates as of Employee's last day of employment or (2) any state in which the Company is in current negotiations to expand its operations as of Employee's last day of employment with the Company about which Employee had actual knowledge.

Notwithstanding the foregoing, if Employee separates from the Company and joins a Competing Business during the Restricted Period solely to practice medicine as a physician, the Restricted Territory is defined as a 25-mile radius from any Company center, clinic or office in the Market(s) in which Employee performed any services or conducted any business during the last two (2) years of his/her employment with the Company.

4. "**Market**" is defined as the county and adjacent counties in which the Employee worked or performed services for the Company.

5. "**Medicare Advantage Risk Agreement**" is defined as a payment model for healthcare services to Medicare patients, whereby the healthcare company, practice or physician takes risk on the Medicare patients they manage, are paid pursuant to Per Member Per Month ("PMPM") capitation payments and/or a percentage of premium model and/or payments to the practice that are adjusted up or down based on Medicare Advantage revenue and/or medical costs, or anything other than a traditional Fee-For-Service ("FFS") payment structure.

6. "**Primary Care Practice**" is defined as any practice that employs or contracts with primary care physicians.

8. **Non-Compete Exceptions**.  Notwithstanding Section 7 above, the CEO, in his discretion, may consider an Employee's request to waive Section 7, upon a demonstration that Employee's new duties and responsibilities for Competing Business shall be limited during the Restricted Period such that Employee will not aid/facilitate new company's competition with Company. Employee understands that any waiver of the non-compete during the Restricted Period by the CEO will operate only as to each specific request and shall not be deemed a unilateral waiver of the non-compete provision.

9. **Employee Non-Solicitation.**  During Employee's employment and the Restricted Period, Employee shall not, directly or indirectly through any agent, corporation or other entity, disrupt, damage, impair, or interfere with Company's business by recruiting, soliciting or employing any of Company's employees or patients with whom Employee worked or about whom Employee had access to Confidential Information, to leave his/her employment or engagement with the Company, in the Restricted Territory for a Competing Business.  Should Employee become aware that any other employee or third party has engaged in such conduct, Employee shall immediately advise their supervisor.

10. **Vendor Non-Solicitation and Non-Interference**.  During the Employee's employment and the Restricted Period, Employee shall not, directly or indirectly: (a) solicit, encourage, cause or attempt to cause any Restricted Vendor (as defined below) to utilize or purchase any services or products from any business other than the Company that are competitive with or a substitute for the services or products offered by the Company, (b) sell or provide any services or products to any Restricted Vendor that are competitive with or a substitute for the Company's services or products; or (c) solicit, encourage, cause or attempt to cause business partner of the Company not to do business with or to reduce any part of its business with the Company.

a. "**Restricted Vendor**" means: any vendor or business partner of the Company, including but not limited to health plan partners or payors, (a) with whom Employee had contact or communications at any time during Employee's last twelve (12) months as a Company

employee; (b) for whom Employee supervised the Company's account or dealings at any time during Employee's last twelve (12) months as a Company employee; and/or (c) about whom Employee obtained any Confidential Information during Employee's last twelve (12) months as a Company employee.

11. **Reasonableness**.  Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions set forth herein are fair, reasonable, and necessary to protect the Company's legitimate business interests, including its goodwill with its patients, customers, vendors and employees, its Confidential Information, and its unique and specialized training.  In addition, Employee acknowledges and agrees that (a) Employee's abilities and skills are readily useable in a variety of capacities in most geographic areas such that the foregoing restrictions do not unreasonably restrict Employee with respect to seeking employment elsewhere in non-competitive ventures should Employee's employment with the Company end; (b) the Company significantly invested in Employee's development and the extraordinary, unique and specialized training provided exclusively and only by the Company to Employee; (c) the relationship between the Company and its patients, customers and vendors are of a near-permanent nature and but for Employee's association with the Company, Employee would not have had contact with the Company's patients and customers; and (d) the information to which Employee has had or will have access is of a confidential and proprietary nature, and the good will of the Company and/or customer, patients and vendor relationships which Employee has or will enjoy while employed by the Company are significant and valuable to the Company.  Employee also acknowledges that the Restricted Territory is appropriate and reasonable considering the scope of the Company's business, its plans to expand the business, and the risk of competing entities misusing the Company's Confidential Information on a nationwide basis.

Thus, Employee agrees not to contest the general validity or enforceability of this Agreement before any court, arbitration panel or other body.  Employee's restrictions and obligations in Sections 5, 7, and 9-10  (the "**Post Separation Obligations**") shall survive Employee's last day of employment with the Company and shall be in addition to any restrictions imposed upon Employee by statute, at common law, or in other agreements.  The Post Separation Obligations shall continue to be enforceable regardless of whether there is any dispute between the Parties concerning any alleged breach of this Agreement.

12. **Breach by Employee**.  Employee agrees that Employee's breach of any of the Post Separation Obligations will result in irreparable damage and continuing injury to the Company. Therefore, in the event of any breach or threatened breach of such covenants, the Company shall be entitled to an injunction from a court of competent jurisdiction enjoining Employee from committing any violation of those covenants, and Employee hereby consents to the issuance of such an injunction.  Employee further agrees that the Company shall not be required to post a bond to obtain such an injunction.  All remedies available to the Company by reason of a breach by Employee of the provisions of this Agreement are cumulative, none is exclusive, and all remedies may be exercised concurrently or consecutively at the Company's option. Further, in the event of a breach or violation by Employee of any of the provisions of this

Agreement, the term thereof, as the case may be, shall be tolled until such breach or violation has been fully cured.

13. **Extension of Restricted Period**.  Under limited circumstances, upon the approval of the CEO, and if mutually agreed to, Company may purchase an extension of Employee's Restricted Period for consideration up to a commensurate amount.

14. **Work Product**.  Employee shall disclose promptly to Company any and all works of authorship, inventions, designs, ideas, business plans, discoveries, products, processes, software, operations or any improvements, enhancements or documentation of or to the same, whether or not patentable or copyrightable, conceived, made, worked on or first reduced to practice by Employee, individually or jointly with others, during the period of employment or with the use of the Company's time, equipment, materials or facilities, in any way related or pertaining to or connected with the present or anticipated business, development, work or research of the Company or that results from or are suggested by any work Employee may do for the Company, and whether produced during normal business hours or on personal time (collectively "Work Product").

a. All Work Product of Employee shall be deemed as applicable, to be "work made for hire" within the meaning of §101 of the Copyright Act.  All intellectual property rights, including patent, trademark, trade secret and copyright rights, in and to the Work Product are the sole property of the Company.  To the extent that the Work Product is deemed not to be "work made for hire," this Agreement shall constitute an irrevocable assignment by Employee to the Company of all rights in and to the Work Product.

b. Employee hereby waives and further agrees not to assert any moral rights in or to the Work Product, including, but not limited to, rights to identification of authorship, rights to approval of modifications, limitations on subsequent modifications, and rights to restrict, cause or suppress publication or distribution of the Work Product.

15. **Intellectual Property**.  Employee acknowledges that all the Intellectual Property (as defined below) will be considered "works made for hire" as that term is defined in Section 101 of the Copyright Act (17 U.S.C. §101) and that all right, title and interest in such Intellectual Property will be the sole and exclusive property of the Company.  To the extent that any of the Intellectual Property may not by law be considered a work made for hire, or to the extent that, notwithstanding the foregoing, Employee retains any interest in the Intellectual Property, Employee hereby irrevocably assigns and transfers to the Company any and all right, title, or interest that Employee may now or in the future have in the Intellectual Property under patent, copyright, trade secret, trademark or other law, in perpetuity or for the longest period otherwise permitted by law, without the necessity of further consideration.

a. The Company will be entitled to obtain and hold in its own name all copyrights, patents, trade

DocuSign Envelope ID: 9286068D-7668-4580-9430-222808797570

secrets, trademarks and other similar registrations with respect to such Intellectual Property. Employee further consents to execute any and all documents and provide any further cooperation or assistance reasonably required by the Company to perfect, maintain or otherwise protect its rights in the Intellectual Property. If the Company is unable after reasonable efforts to secure Employee's signature, cooperation or assistance in accordance with the preceding sentence, whether because of Employee's incapacity or any other reason whatsoever, Employee hereby designates and appoints the Company or its designee as Employee's agent and attorney-in-fact, to act on Employee's behalf, to execute and file documents and to do all other lawfully permitted acts necessary or desirable to perfect, maintain or otherwise protect the Company's rights in the Intellectual Property. Employee acknowledges that such appointment is coupled with an interest and is therefore irrevocable. Employee acknowledges that any use of Intellectual Property outside the scope of Employee's employment with Company is strictly prohibited absent the prior written consent of the Company.

b. "**Intellectual Property**:" means (a) all inventions (whether patentable or unpatentable and whether or not reduced to practice), all improvements thereto, and all patents and patent applications claiming such inventions, (b) all trademarks, service marks, trade dress, logos, trade names, fictitious names, brand names, brand marks and corporate names, together with all translations, adaptations, derivations, and combinations thereof and including all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith, (c) all copyrightable works, all copyrights, and all applications, registrations, and renewals in connection therewith, (d) all mask works and all applications, registrations, and renewals in connection therewith, (e) all trade secrets (including research and development, know-how, formulas, algorithms, compositions, manufacturing and production processes and techniques, methodologies, technical data, designs, drawings and specifications), (f) all computer software (including data, source and object codes and related documentation) and architecture related thereto, (g) all other proprietary rights, (h) all copies and tangible embodiments thereof (in whatever form or medium), or (i) similar intangible personal property which have been or are developed or created in whole or in part by Employee (1) at any time and at any place during the Period of Employment and which, in the case of any or all of the foregoing, are related to and used in connection with the business of the Company, or (2) are created or initiated as a result of tasks assigned to Employee by the Company.

c. Notwithstanding the foregoing, nothing in this Agreement applies to an invention or other work for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

16. **Prior Obligations.**  Employee certifies that his/her duties shall not breach any obligation to any third- party, including, but not limited to, any prior employer, nor disclose or use information that is proprietary or confidential to such third-party. Employee certifies that he/she has no continuing obligation with respect to any restrictive covenant with any third party,

Page  9   of  13

including any prior employer.

17. **Severability & Reformation.** As allowed by applicable law, should any provision of this Agreement be determined by a Court of competent jurisdiction to be unenforceable or invalid, in whole or in part, the remaining provisions of this Agreement shall not be affected thereby. The invalid or unenforceable provision shall be deemed stricken from this Agreement, and Employee hereby consents to and affirmatively requests that the Court reform the provision to be reasonable and enforceable, and enforce the provision as so reformed.

18. **Amendment**.  This Agreement may only be amended, modified, or waived by mutual agreement of the Parties. No provision of this Agreement shall be varied, contradicted or explained by any oral agreement,  court of dealing or performance or any other matter not set forth in an agreement in writing and signed by both Parties.

19. **Third-Party Beneficiaries**. Employee acknowledges that each third party who has disclosed Confidential Information to the Company under the condition that the Company shall not disclose or misappropriate the same, shall be deemed a third-party beneficiary under this Agreement as to such Confidential Information.

20. **Successors & Assigns**.  The terms of this Agreement shall inure to the benefit of and be binding upon the Company, its successors and assigns, and upon Employee and Employee's heirs and personal representatives. Neither this Agreement nor any rights granted hereunder may be assigned, transferred, conveyed or encumbered by Employee without Employer's prior written consent. The Company may assign this Agreement to any affiliate or successor, and Employee hereby consents to any such assignment by the Company.

21. **Waiver**. The waiver by either Party of any right hereunder or of any breach by the other Party will not be deemed a waiver of any other right hereunder or of any other breach by the other Party. No waiver will constitute a continuing waiver unless specifically stated in a signed writing, and any waiver will operate only as to the specific term or condition waived.

22. **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  A facsimile or email copy shall have the same force and effect as execution and delivery of an original manually signed copy hereof.

23. **Survival**.  Except as otherwise set forth herein, the rights and obligations set forth in this Agreement shall survive indefinitely any termination or expiration of this Agreement.

24. **Governing Law/Venue**. Any dispute between Employee and Employer shall be governed by and construed exclusively in accordance with the laws of the State of Florida, without regard

DocuSign Envelope ID: 9286068D-7568-4580-9430-22280879757D

to the principles of conflicts of laws. The Parties hereto irrevocably consent to personal jurisdiction and venue for all disputes arising under this Agreement in the courts in Miami-Dade County, Florida, and the parties hereby waive any objection to the jurisdiction or venue of any action instituted in such courts.

25. **Attorneys' Fees**.  In the event of any dispute between the Parties related to this Agreement, each Party shall be responsible for their own attorney's fees and costs.

26. **Integration**.  This Agreement supersedes all prior agreements between the parties and constitutes the complete and exclusive statement of the terms of the Agreement between the Parties with respect to its subject matter. However, nothing in this Agreement is intended to or shall waive or limit the terms of any Confidentiality and Protective Covenant Agreement entered into by the Parties.

27. **Non-Coercion & Acknowledgment**. By signing below, Employee represents he/she has not been pressured, misled or induced to sign this Agreement based upon any representation by Employer or its agents not contained herein. Employee has carefully read and considered the provisions of this Agreement, has had the opportunity to consult with an attorney if desired, and agrees that the restrictions are fair and **Non-Coercion & Acknowledgment**. By signing below, Employee represents he/she has not been pressured, misled or induced to sign this Agreement based upon any representation by Employer or its agents not contained herein. Employee has carefully read and considered the provisions of this Agreement, has had the opportunity to consult with an attorney if desired, and agrees that the restrictions are fair and reasonably required for the protection of Company's interest. Employee has entered into this Agreement voluntarily, and Employee's acknowledgment is freely given.

**IN WITNESS WHEREOF**, the parties hereto executed this Agreement on the date indicated below.

Exhibit 1
Parish/County List

- Acadia
- Allen
- Ascension
- Assumption
- Avoyelles
- Beauregard
- Bienville
- Bossier
- Caddo
- Calcasieu
- Caldwell
- Cameron

- Catahoula
- Claiborne
- Concordia
- De Soto
- East Baton Rouge
- East Carroll
- East Feliciana
- Evangeline
- Franklin
- Grant
- Iberia
- Iberville
- Jackson
- Jefferson
- Jefferson Davis
- La Salle
- Lafayette
- Lafourche
- Lincoln
- Livingston
- Madison
- Morehouse
- Natchitoches
- Orleans
- Ouachita
- Plaquemines
- Pointe Coupee
- Rapides
- Red River
- Richland
- Sabine
- St. Bernard
- St. Charles
- St. Helena
- St. James
- St. John The Baptist
- St. Landry
- St. Martin
- St. Mary
- St. Tammany
- Tangipahoa
- Tensas
- Terrebonne
- Union
- Vermilion
- Vernon
- Washington

- Webster
- West Baton Rouge
- West Carroll
- West Feliciana
- Winn

**COMPANY:**
Chemed Family of Companies

By: _____
Name:   Jim Whitling
Title:   Chief Human Resources Officer

**Employee:**

By:   ANANYA BANERJEE
EF65DA5F885E4C6...

**Print Name:**   ANANYA BANERJEE

**Dated:**   12/17/2020

Page   13   of   13

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION | **CIVIL COVER SHEET** | CASE NUMBER: _____ |
|---|---|---|
| ☒ CIVIL | | |
| ☐ DISTRICTS | | JUDGE _____ |
| ☐ FAMILY | | |
| ☐ OTHER | | |

| PLAINTIFF | VS. DEFENDANT | CLOCK IN |
|---|---|---|
| CHENMED, LLC, and CHEN NEIGHBORH | ANAYA BANJEREE, ALEDADE, INC., A | |

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**AMOUNT OF CLAIM**

**Please indicate the estimated amount of the claim, rounded to the nearest dollar. $** 100,000.00 _____

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☐ Contracts and Indebtedness
☐ Eminent domain
☐ Auto Negligence
☐ Negligence - Other
  ☐ Business Governance
  ☐ Business Torts
  ☐ Environmental/Toxin Tort
  ☐ Third Party Indemnification
  ☐ Construction Defect
  ☐ Mass Tort
  ☐ Negligent Security
  ☐ Nursing Home Negligence
  ☐ Premises Liability - Commercial
  ☐ Premises Liability - Residential
☐ Products Liability
☐ Real Property/Mortgage Foreclosure
  ☐ Commercial Foreclosure
  ☐ Homestead Residential Foreclosure
  ☐ Non-Homestead Residential Foreclosure
  ☐ Other Real Property Actions
☐ Professional Malpractice
  ☐ Malpractice - Business
  ☐ Malpractice - Medical
  ☐ Malpractice - Other professional

☐ Other
  ☐ Antitrust/Trade Regulation
  ☐ Business Transactions
  ☐ Circuit Civil - Not Applicable
  ☐ Constitutional Challenge - Statute or Ordinance
  ☐ Constitutional Challenge - Proposed amendment
  ☐ Corporate Trust
  ☐ Discrimination - Employment or Other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities Litigation
  ☒ Trade Secrets
  ☐ Trust Litigation

☐ County Civil
  ☐ Small Claims up to $8,000
  ☐ Civil
  ☐ Replevins
  ☐ Evictions
  ☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. ☒ Yes ☐ No

**REMEDIES SOUGHT** (check all that apply):

☒    Monetary;

☐    Non-monetary declaratory or injunctive relief;

☐    Punitive

**NUMBER OF CAUSES OF ACTION**: [  1  ]

(specify) _____

_____

**IS THIS CASE A CLASS ACTION LAWSUIT?**

☐    Yes

☒    No

**HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**

☒    No

☐    Yes   If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

**IS JURY TRIAL DEMANDED IN COMPLAINT?**

☒    Yes

☐    No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature _____   Florida Bar # _371726_____

               Attorney or party                          (Bar #, if attorney)

 JAMES A. GALE _____    _NOVEMBER 3, 20200_____

(type or print name)                         Date

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET**

Plaintiff must file this cover sheet with the first document filed in the action or proceeding (except small claims cases, probate, or family cases). Domestic and juvenile cases should be accompanied by a completed Florida Family Law Rules of Procedure Form 12.928, Cover Sheet for Family Court Cases. Failure to file a civil cover sheet in any civil case other than those excepted above may result in sanctions.

**I.   Case Style.** Enter the name of the court, the appropriate case number assigned at the time of filing of the original complaint or petition, the name of the judge assigned (if applicable), and the name (last, first, middle initial) of plaintiff(s) and defendant(s).

**II.   Amount of Claim.** Enter the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes and is not considered dispositive of the claim.

**III.   Type of Case.** Place an "X" on the appropriate line. If the cause fits more than one type of case, select the most definitive. If the most definitive label is a subcategory (indented under a broader category label), place an "X" on the category and subcategory lines. Definitions of the cases are provided below in the order they appear on the form.

**Circuit Civil**

(A) Condominium - all civil lawsuits pursuant to Chapter 718, Florida Statutes, in which a condominium association is a party.

(B) Contracts and indebtedness - all contract actions relating to promissory notes and other debts, including those arising from sale of goods, but excluding contract disputes involving condominium associations.

(C) Eminent domain - all matters relating to the taking of private property for public use, including inverse condemnation by state agencies, political subdivisions, or public service corporations.

(D) Auto negligence - all matter arising out of a party's allegedly negligent operation of a motor vehicle.

(E) Negligence-other - all actions sounding in negligence, including statutory claims for relief on account of death or injury, that are not included in other main categories.

(F) Business governance - all matters relating to the management, administration, or control of a company.

(G) Business torts - all matters relating to liability for economic loss allegedly caused by interference with economic or business relationships.

(H) Environmental/Toxic tort - all matters relating to claims that violations of environmental regulatory provisions or exposure to a chemical caused injury or disease.

(I)  Third party indemnification - all matters relating to liability transferred to a third party in a financial relationship.

(J) Construction defect - all civil lawsuits in which damage or injury was allegedly caused by defects in the construction of a structure.

(K) Mass tort - all matters relating to a civil action involving numerous plaintiffs against one or more defendants.

(L) Negligent security - all matters involving injury to a person or property allegedly resulting from insufficient security.

(M) Nursing home negligence - all matters involving injury to a nursing home resident resulting from negligence of nursing home staff or facilities.

(N) Premises liability-commercial - all matters involving injury to a person or property allegedly resulting from a defect on the premises of a commercial property.

(O) Premises liability-residential - all matters involving injury to a person or property allegedly resulting from a defect on the premises of a residential property.

(P) Products liability - all matters involving injury to a person or property allegedly resulting from the manufacture or sale of a defective product or from a failure to warn.

(Q) Real property/Mortgage foreclosure - all matters relating to the possession, title, or boundaries of real property. All matters involving foreclosures or sales of real property, including foreclosures associated with condominium associations or condominium units. (The amount of claim specified in Section II. of the form determines the filing fee pursuant to section 28.241, Florida Statutes.)

(R) Commercial foreclosure - all matters relating to the termination of a business owner's interest in commercial property by a lender to gain title or force a sale to satisfy the unpaid dept secured by the property.

(S) Homestead residential foreclosure - all matters relating to the termination of a residential property owner's interest by a lender to gain title or force a sale to satisfy the unpaid debt secured by the property where the property has been granted a homestead exemption.

(T) Non-homestead residential foreclosure - all matters relating to the termination of a residential property owner's interest by a lender to gain title or force a sale to satisfy the unpaid debt secured by the property where the property has not been granted a homestead exemption.

(U) Other real property actions - all matters relating to land, land improvements, or property rights not involving commercial or residential foreclosure.

(V) Professional malpractice - all professional malpractice lawsuits.

(W) Malpractice-business - all matters relating to a business's or business person's failure to exercise the degree of care and skill that someone in the same line of work would use under similar circumstances.

 (X) Malpractice-medical - all matters relating to a doctor's failure to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar circumstances.

(Y) Malpractice-other professional - all matters relating to negligence of those other than medical or business professionals.

(Z) Other - all civil matters not included in other categories.

(AA) Antitrust/Trade regulation - all matters relating to unfair methods of competition or unfair or deceptive business acts or practices.

(AB) Business transactions - all matters relating to actions that affect financial or economic interests.

(AC) Constitutional challenge-statute or ordinance - a challenge to a statute or ordinance, citing a violation of the Florida Constitution.

(AD) Constitutional challenge-proposed amendment - a challenge to a legislatively initiated proposed constitutional amendment, but excluding challenges to a citizen-initiated proposed constitutional amendment because the Florida Supreme Court has directed jurisdiction of such challenges.

(AE) Corporate trust - all matters relating to the business activities of financial services companies or banks acting in a fiduciary capacity for investors.

(AF) Discrimination-employment or other - all matters relating to discrimination, including employment, sex, race, age, handicap, harassment, retaliation, or wages.

(AG) Insurance claims - all matters relating to claims filed with an insurance company.

(AH) Intellectual property - all matters relating to intangible rights protecting commercially valuable products of the human intellect.

(AI) Libel/Slander - all matters relating to written, visual, oral, or aural defamation of character.

(AJ) Shareholder derivative action - all matters relating to actions by a corporation's shareholders to protect and benefit all shareholders against corporate management for improper management.

(AK) Securities litigation - all matters relating to the financial interest or instruments of a company or corporation.

(AL) Trade secrets - all matters relating to a formula, process, device, or other business information that is kept confidential to maintain an advantage over competitors.

(AM) Trust litigation - all civil matters involving guardianships, estates, or trusts and not appropriately filed in probate proceedings.

**County Civil**

(AN) Civil – all matters involving claims ranging from $8,001 through $30,000 in damages, exclusive of interest, costs, and attorney fees.

(AO) Replevins—all lawsuits pursuant to Chapter 78, Florida Statutes, involving claims up to $30,000.

(AP) Evictions—all matters involving the recovery of possession of leased land or rental property by process of law.

(AQ) Other civil (non-monetary)—includes all other non-monetary county civil matters that were not described in other county civil categories.

---

**IV. Remedies Sought.** Place an "X" in the appropriate box. If more than one remedy is sought in the complaint or petition, check all that apply.

**V. Number of Causes of Action.** If the complaint or petition alleges more than one cause of action, note the number and the name of the cause action.

**VI. Class Action.** Place an "X" in the appropriate box.

**VII. Related Cases.** Places an "X" in the appropriate box.

**VIII. Is the Jury Trial Demanded In Complaint?** Check the appropriate box to indicate whether a jury trial is being demanded in the complaint.

**ATTORNEY OR PARTY SIGNATURE.** Sign the civil cover sheet. Print legibly the name of the person signing the civil cover sheet. Attorneys must include a Florida Bar number. Insert the date the civil cover sheet is signed. Signature is a certification that the filer has provided accurate information on the civil cover sheet, **and has read and complied with the requirements of Florida Rule of Judicial Administration 2.425.**

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☒ CIVIL ☐ DISTRICTS ☐ OTHER | **CIVIL ACTION SUMMONS (b)** **Form for Personal Service on a Natural Person** | 2022-021379-CA-01 |

| PLAINTIFF(S) | VS.   DEFENDANT(S) | CLOCK IN |
|---|---|---|
| CHENMED, LLC and CHENMED NEIGHBORHOOD MEDICAL CENTER OF SOUTH FLORIDA | ANAYA BANERJEE, ALEDADE, INC., and ALEDADE CARE SOLUTIONS OF FLORIDA, LLC. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): Anaya Banerjee | Address: 1118 River Bend Drive, Houston, Texas 77063 |
|---|---|

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| ☐ **Dade County Courthouse** (05) Room 133 73 West Flagler Street Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20) Suite 103 5400 N.W. 22nd Avenue Miami, FL 33142 | ☐ **Hialeah District Court** (21) Room 100 11 East 6th Street Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23) Room 100 15555 Biscayne Blvd. North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24) Room 200 1130 Washington Avenue Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25) Room 100 3100 Ponce De Leon Blvd. Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26) Room 1200 10710 SW 211 Street Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney James A. Gale Florida Bar No.  371726 | Address: Cozen O'Connor 200 S. Biscayne Blvd. Suite 3000 Miami, FL 33131 | |
|---|---|---|
| **CLERK OF COURTS HARVEY RUVIN** | | **DATE ON:** |
| | DEPUTY CLERK | |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| --- |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
| --- | --- | --- |
| ☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **CIVIL ACTION SUMMONS (b)**<br>**Form for Personal Service on a Natural Person** | 2022-021379-CA-01 |

| PLAINTIFF(S) | VS.   DEFENDANT(S) | CLOCK IN |
| --- | --- | --- |
| CHENMED, LLC and<br>CHENMED NEIGHBORHOOD<br>MEDICAL CENTER OF<br>SOUTH FLORIDA | ANAYA BANERJEE, ALEDADE, INC., and ALEDADE CARE<br>SOLUTIONS OF FLORIDA, LLC. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>    Aledade, Inc. | Address:<br>    4500 Montgomery Ave., 950N<br>    Bethesda, MD 20814 |
| --- | --- |

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| ☐ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
| --- | --- | --- | --- |
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney<br>James A. Gale<br>Florida Bar No. 371726 | Address: Cozen O'Connor<br>200 S. Biscayne Blvd. Suite 3000<br>Miami, FL 33131 | |
| --- | --- | --- |
| **CLERK OF COURTS<br>HARVEY RUVIN** | | **DATE ON:** |
| | DEPUTY CLERK | |

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 160895284 E-Filed 11/08/2022 04:26:14 PM

| | | |
|---|---|---|
| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **CIVIL ACTION SUMMONS (b)**<br>**Form for Personal Service on a Natural Person** | 2022-021379-CA-01 |

| PLAINTIFF(S) | VS.   DEFENDANT(S) | CLOCK IN |
|---|---|---|
| CHENMED, LLC and<br>CHENMED NEIGHBORHOOD<br>MEDICAL CENTER OF<br>SOUTH FLORIDA | ANAYA BANERJEE, ALEDADE, INC., and ALEDADE CARE<br>SOLUTIONS OF FLORIDA, LLC. | |

**THE STATE OF FLORIDA:** TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>    Aledade Care Solutions of Florida, LLC | Address:<br>    4500 Montgomery Ave., 950N<br>    Bethesda, MD 20814 |
|---|---|

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience:

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| ☐ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney<br>James A. Gale<br>Florida Bar No. 371726 | Address: Cozen O'Connor<br>200 S. Biscayne Blvd. Suite 3000<br>Miami, FL 33131 | |
|---|---|---|
| **CLERK OF COURTS**<br>**HARVEY RUVIN** | | **DATE ON:** |
| | DEPUTY CLERK | |

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**